1  SKAPIK LAW GROUP
   Mark J. Skapik (SBN 164957)
2  Geralyn L. Skapik (SBN 145055)
   Blair J. Berkley (SBN 222293)
3  Matthew T. Falkenstein (SBN 333302)
   5861 Pine Avenue, Suite A-1
4  Chino Hills, California 91709
   Telephone: (909) 398-4404
5  Facsimile: (909) 398-1883

6  Attorneys for Plaintiff Constantino Joshua Acevedo III

7

8                UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11

| | |
|---|---|
| 12  CONSTANTINO JOSHUA ACEVEDO III, an individual, | Case No.: |
| 13 | **COMPLAINT** |
| 14                    Plaintiff, | 1. Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983) |
| 15              vs. | 2. Unreasonable Search and Seizure – Failure to Intervene (42 U.S.C. § 1983) |
| 16  CITY OF FONTANA; JOHN PIEHNIK, an individual; DUSTIN MULLINS, an | 3. *Monell* Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983) |
| 17  individual; MARK RUFF, an individual; DOES 1-10, inclusive, | 4. *Monell* Liability – Failure to Train (42 U.S.C. § 1983) |
| 18                   Defendants. | 5. *Monell* Liability – Ratification (42 U.S.C. § 1983) |
| 19 | |
| 20 | **DEMAND FOR JURY TRIAL** |

21
22
23
24
25
26
27
28

## COMPLAINT FOR DAMAGES

1.      Plaintiff CONSTANTINO JOSHUA ACEVEDO III for his complaint against Defendants CITY OF FONTANA, OFFICER PIEHNIK, OFFICER MULLINS, OFFICER RUFF, and DOES 1-10, inclusive, alleges as follows:

## INTRODUCTION

2.      This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution in connection with Plaintiff's arrest by Defendants PIEHNIK, MULLINS, and RUFF, along with other yet-to-be identified members of the Fontana Police Department, which is owned and operated by Defendant CITY OF FONTANA.

## PARTIES

3.      At all relevant times, PLAINTIFF was an individual residing in the County of San Bernardino, California. At all times relevant, PLAINTIFF is and was a male of Hispanic and Native American heritage. At all times relevant, PLAINTIFF has and is diagnosed with Aspergers, which is a disease that places PLAINTIFF on the autism spectrum.

4.      Defendant JOHN PIEHNIK, first name unknown, is an individual and an officer with the Fontana Police Department. JOHN PIEHNIK's Badge # is 1299.

5.      Defendant DUSTIN MULLINS, first name unknown, is an individual and an officer with the Fontana Police Department. DUSTIN MULLINS' Badge # is 110.

6.      Defendant MARK RUFF, first name unknown, is an individual and an officer with the Fontana Police Department. MARK RUFF's Badge # is 1404.

7.      At all times relevant, Defendant CITY OF FONTANA ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. At all times relevant, the CITY was the employer of Defendants PIEHNIK, MULLINS, and RUFF (hereinafter, the "OFFICER DEFENDANTS"), along with DOES 1-8, who were various CITY officers and/or supervisorial officers; and DOES 9-10, who were managerial, supervisorial, and policymaking employees of the CITY's police

department. On information and belief, at all times relevant, DOES 1-10 were residents of the County of San Bernardino, California. DOES 1-10 are sued in their individual capacity for damages only.

8.     At all times relevant, the OFFICER DEFENDANTS and DOES 1-10, inclusive, were duly authorized employees and agents of the CITY, who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant CITY.

9.     At all relevant times, Defendants DOES 1-10 were duly appointed police officers and/or employees or agents of the CITY, subject to oversight and supervision by the CITY's elected and non-elected officials.

10.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10, inclusive, were acting on the implied and actual permission and consent of the CITY.

11.     At all times mentioned herein, each and every CITY defendant was the agent of each and every other CITY defendant and had the legal duty to oversee and supervise the hiring, training, conduct, and employment of each and every other CITY defendant.

12.     The true names of defendants DOES 1-10, inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct and liabilities alleged herein.

## JURISDICTION AND VENUE

13.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth Amendment of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrence giving rise to this action occurred in the County of San Bernardino, California.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

15.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 14 of this complaint with the same force and effect as though fully set forth herein.

16.     On the morning of September 24, 2021, Plaintiff was suffering from severe kidney failure. Severe kidney failure can manifest in a variety of ways, including delirium and hallucinations. Plaintiff, who is schizophrenic, bipolar, and also suffers from Aspergers, has similar symptoms manifest periodically when he is having a mental health episode.

17.     On the morning of September 24, 2021, as a further effect of the severe kidney failure that Plaintiff was suffering from, he had lost considerable weight and appeared emaciated.

18.     Early in the morning of September 24, 2021, Plaintiff was experiencing severe hallucinations and delirium due to the undiagnosed kidney failure. Plaintiff walked outside of the house in Fontana, California, where he lives with his parents early in the morning and began acting erratically. Plaintiff was "praying" and "worshipping" in his front yard and was jumping up and down while "watering" the front lawn and driveway.

19.     Due to this erratic behavior and the fact that Plaintiff was seemingly having a mental health crisis, Plaintiff's parents called Fontana Police Department to ask for assistance for Plaintiff. Fontana Police Department is familiar with Plaintiff and his history of mental health issues, as they have had to assist him in the past when he has suffered mental health crises.

20.     Defendants PIEHNIK, MULLINS, and RUFF (the OFFICER DEFENDANTS), along with DOES 1-8, inclusive, arrived at Plaintiff's home and witnessed him acting erratically. However, despite being familiar with Plaintiff and his

family and helping them in the past, the officers refused to offer any assistance and refused to remove Plaintiff from the property.

21.     One or more of the OFFICER DEFENDANTS and/or DOES 1-8, inclusive, informed Plaintiff's family that in order for them to assist, Plaintiff's family would have to enter a restraining order against Plaintiff. No officer from Defendant CITY had previously required this to assist with any of Plaintiff's previous mental health crises.

22.     Plaintiff's family requested that emergency medical services be sent to assist Plaintiff while he was in this delirious state. The OFFICER DEFENDANTS refused to contact emergency medical services.

23.     Eventually, Plaintiff's mother left to enter a restraining order against Plaintiff so that the officers would assist with the obvious and debilitating mental health crisis that he was suffering from. Plaintiff's father remained behind to attempt to help calm Plaintiff and to continue as a liaison between Plaintiff and the officers. At this time Plaintiff still was simply spraying the hose in the front lawn of the house, jumping up and down, and "praying."

24.     After some time, due to his emaciated appearance and weight loss, Plaintiff's pants fell below his waist, causing his genitals to be exposed while in his front yard. The OFFICER DEFENDANTS observed this, and at this point decided to arrest Plaintiff for indecent exposure.

25.     Plaintiff's father was still present. Plaintiff's father was told by the OFFICER DEFENDANTS to prevent Plaintiff from re-entering the home, presumably because the officers lacked probable cause to enter the home and also lacked permission to enter the home should Plaintiff have fled from the OFFICER DEFENDANTS.

26.     Plaintiff, who was still in a state of delirium, was startled when the OFFICER DEFENDANTS approached him and fled into the house. Upon information and belief, at least one of the OFFICER DEFENDANTS attempted to use a taser dart on Plaintiff to prevent him from fleeing into the house, despite Plaintiff making no threats towards any person and despite the fact that no violent crime had been committed. At

least one taser dart connected with Plaintiff while he was outside the house, causing extreme pain and suffering to Plaintiff.

27.    Plaintiff fled into the house. The OFFICER DEFENDANTS pursued him despite not having permission to enter the house. Plaintiff's father followed as well.

28.    Upon cornering Plaintiff in the house, the OFFICER DEFENDANTS proceeded to use excessive and potentially deadly force against him. The OFFICER DEFENDANTS deployed taser darts against Plaintiff while he was in his living room at least three (3) times. Further, the OFFICER DEFENDANTS struck Plaintiff with fists, feet, and knees multiple times in the body and head, pulled Plaintiff's hair, and applied other forms of excessive force against him.

29.    At no time was Plaintiff resisting the OFFICER DEFENDANTS nor did he ever pose a risk to the OFFICER DEFENDANTS. Plaintiff was in extreme distress to having been tased and his already compromised mental state. Plaintiff had a difficult time understanding the severe escalation from the OFFICER DEFENDANTS. The OFFICER DEFENDANTS took Plaintiff's confusion as willful disobedience and decided to increase the use of force against him in order to force compliance.

30.    The OFFICER DEFENDANTS then placed Plaintiff in handcuffs and sat him on the sidewalk outside of his home. Plaintiff was bleeding profusely, suffering shock from multiple taser wounds, and was still in a state of delirium due to kidney failure. Plaintiff requested medical attention multiple times. Despite this, Plaintiff is informed and believes and thereon alleges that none of the OFFICER DEFENDANTS requested any medical assistance for Plaintiff and left him in his suffering while they watched on.

31.    Plaintiff was arrested and taken to Kaiser Permanente in Fontana, California on a 5150 hold. He was held for three days, and after which was transferred to Del Amo Behavioral Health in Torrance, California, where he was held from September 29, 2021 through October 13, 2021.

32.     While Plaintiff was at Kaiser Permanent in Fontana, California, it was discovered that he was in severe kidney failure with creatine levels almost 7 times the recommended level. Plaintiff's erratic behavior was attributed to his severe kidney failure.

33.     Plaintiff was treated for his severe kidney failure and mental health issues and returned home. The charges against Plaintiff were dismissed.

34.     Plaintiff is informed and believes and hereon alleges that Defendant CITY has in place specific mental health protocols and units that are to be used to de-escalate situations involving people suffering from mental health crises. Plaintiff is further informed and believes and thereon alleges that the OFFICER DEFENDANTS did not at any point call for this mental health unit or any other mental health services, despite being aware that Plaintiff was suffering from a mental health crisis.

35.     The OFFICER DEFENDANTS were aware of Plaintiff's mental health crisis and fragile physical and mental state because when they arrived on September 24, 2021, Plaintiff's father informed them that Plaintiff had been acting erratically all week and that he had been subjected to a traumatic contact with the Riverside County Sheriff's Department two days prior. Plaintiff's father pleaded with the OFFICER DEFENDANTS to help Plaintiff, whose mental and physical state had clearly deteriorated. However, despite this knowledge, the OFFICER DEFENDANTS elected to use brute and excessive force against Plaintiff.

## I.

## FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)

(By PLAINTIFF against the OFFICER DEFENDANTS and DOES 1-8, inclusive)

36.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 35 of this Complaint with the same force and effect as if fully set forth herein.

37.     The OFFICER DEFENDANTS' and DOES 1-8's unjustified beating and tasing of PLAINTIFF deprived PLAINTIFF of his right to be secure in his persons

against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

38.     The unreasonable use of force by the OFFICER DEFENDANTS and DOES 1-8, inclusive, deprived PLAINTIFF of his right to be secure in his person against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

39.     As a result, PLAINTIFF suffered extreme mental and physical pain and suffering, emotional distress, and loss of enjoyment of life.

40.     As a result of the conduct of the OFFICER DEFENDANTS and DOES 1-8, inclusive, they are liable for PLAINTIFF's injuries, either because they were integral participants in the excessive force, or because they failed to intervene to prevent these violations.

41.     This use of excessive and potentially deadly force was unreasonable under the circumstances, especially since it should have been obvious that PLAINTIFF was having a mental and medical health crisis, the OFFICER DEFENDANTS and DOES 1-8, inclusive, were informed of the same, and no one was in any danger from PLAINTIFF when he was tased and beaten. Defendants were aware that PLAINTIFF's family had requested medical aid from them multiple times within the previous seven days leading to the incident alleged in this complaint, and yet the OFFICER DEFENDANTS and DOES 1-8, inclusive, still used excessive and potentially deadly force against PLAINTIFF. Defendants' actions thus deprived PLAINTIFF of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

42.     The conduct of the OFFICER DEFENDANTS and DOES 1-8, inclusive, was willful, wanton, malicious, and done with reckless disregard for the rights and safety

of PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages as to the OFFICER DEFENDANTS and DOES 1-8, inclusive.

43.     PLAINTIFF also seeks attorney fees under this claim.

## II.

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure – Failure to Intervene

(By Plaintiff against the OFFICER DEFENDANTS and DOES 1-8, inclusive)

44.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 43 of this Complaint with the same force and effect as if fully set forth herein.

45.     The OFFICER DEFENDANTS and DOES 1-8's unjustified beating and tasing of PLAINTIFF deprived PLAINTIFF of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

46.     The unreasonable use of force by the OFFICER DEFENDANTS and DOES 1-8, inclusive, deprived PLAINTIFF of his right to be secure in his person against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

47.     Furthermore, each of the OFFICER DEFENDANTS and DOES 1-8, inclusive, had a duty to intervene in unconstitutional uses of excessive force by each of the other defendants against PLAINTIFF, and each of them failed to do so.

48.     As a result, PLAINTIFF suffered extreme mental and physical pain and suffering, emotional distress, and loss of enjoyment of life.

49.     As a result of the conduct of the OFFICER DEFENDANTS and DOES 1-8, inclusive, they are liable for PLAINTIFF's injuries because they failed to intervene in each of the other defendants unconstitutional acts.

50.    This use of excessive and potentially deadly force was unreasonable under the circumstances, especially since it should have been obvious that PLAINTIFF was having a mental and medical health crisis, the OFFICER DEFENDANTS and DOES 1-8, inclusive, were informed of the same, and no one was in any danger from PLAINTIFF when he was tased and beaten. Defendants were aware that PLAINTIFF's family had requested medical aid from them multiple times within the previous seven days leading to the incident alleged in this complaint, and yet the OFFICER DEFENDANTS and DOES 1-8, inclusive, still used excessive and potentially deadly force against PLAINTIFF. Defendants' actions thus deprived PLAINTIFF of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

51.    The conduct of the OFFICER DEFENDANTS and DOES 1-8, inclusive, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1-5.

52.    Plaintiff also seeks attorney fees under this claim.

### III.

### **THIRD CLAIM FOR RELIEF**

### *Monell* **Liability – Unconstitutional Custom, Practice, or Policy**

(By PLAINTIFF against Defendants CITY and DOES 9-10, inclusive)

53.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 52 of this complaint with the same force and affect as though fully set forth herein.

54.    At all relevant times, the OFFICER DEFENDANTS and DOES 1-8, inclusive, acted under color of law and within the course and scope of their employment with the CITY.

55.     The acts of the OFFICER DEFENDANTS and DOES 1-8, inclusive, as described above, deprived PLAINTIFF of his particular rights under the United States Constitution.

56.     On information and belief, Defendant CITY's Police Department department has a longstanding practice of escalation during police contacts with citizens, especially when the citizen may be suffering a mental health crisis and/or a medical crisis.

57.     Pursuant to this practice, on information and belief, CITY's Police Department deliberately uses excessive force in order to "break" mentally ill citizens and subject them to unconstitutional practices rather than engaging with them in a way that takes into account the mental illness they are suffering.

58.     On information and belief, PLAINTIFF alleges that this practice is rampant and pervasive throughout the CITY's Police Department, and that it is generally accepted to be the custom of the Police Department to use excessive and unconstitutional force to arrest persons suffering from mental health crises and/or medical crises like PLAINTIFF.

59.     PLAINTIFF is informed and believes and thereon alleges that the CITY is aware that its deputies have a custom and practice to use excessive force when arresting mentally ill persons and has defendant multiple lawsuits related to this pervasive policy, custom, or practice.

60.     PLAINTIFF is informed and believes that the CITY has not disciplined those deputies who engage in this unconstitutional policy, custom, or practice to use excessive force in arresting mentally ill individuals.

61.     The CITY's police officers' policy, custom, or practice of using excessive force in arresting mentally ill persons was the cause in fact of the deprivation of Plaintiff's civil rights when he was tased and beaten while being arrested on September 24, 2021.

62.     The OFFICER DEFENDANTS and DOES 1-8, inclusive, employees and agents of Defendant CITY, operated under color of law when they intentionally, willfully, and wantonly deprived PLAINTIFF of his constitutional rights.

63.     On information and belief, Defendants DOES 9-10, inclusive, are aware of these unconstitutional polices, practices, and customs and either implicitly or explicitly endorse the same.

64.     As a direct and proximate result of the aforementioned conduct, PLAINTIFF endured severe pain and suffering.

65.     Accordingly, Defendants CITY and DOES 9-10, inclusive, are liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983. Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

**IV.**

**FOURTH CAUSE OF ACTION**

***Monell* Liability – Failure to Train**

(By PLAINTIFF against Defendants CITY and DOES 9-10, inclusive)

66.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 65 of this complaint with the same force and effect as though fully set forth herein.

67.     At all relevant times, the OFFICER DEFENDANTS and DOES 1-8, inclusive, acted under color of law and within the course and scope of their employment with the CITY.

68.     The acts of the OFFICER DEFENDANTS and DOES 1-8, inclusive, as described above, deprived PLAINTIFF of his particular rights under the United States Constitution.

69.     On information and belief, Defendants CITY and DOES 1-9, inclusive, failed to properly and adequately train the OFFICER DEFENDANTS and DOES 1-8, inclusive, with regard to use of force generally. The training polices of Defendants CITY and DOES 9-10, inclusive, were not adequate to train their deputies to handle the usual and recurring situations with which they must deal.

70.     On information and belief, Defendants CITY and DOES 9-10, inclusive, failed to properly train their deputies regarding the use of force. As a result of this

deficient policy and deficient training, the OFFICER DEFENDANTS and DOES 1-8, inclusive, beat and tased PLAINTIFF, resulting in the injuries claimed in this lawsuit.

71.     The training polices of Defendant CITY are and were not adequate to train its deputies to handle the usual and recurring situations with which they must deal, including de-escalation techniques, mental health identification and assistance, tactical communication, tactical positioning, and the use of less-than-lethal force.

72.     Defendants CITY and DOES 9-10, inclusive, were deliberately indifferent to the obvious consequences of failing to adequately train the CITY's officers.

73.     The failure of Defendants CITY and DOES 9-10 to provide adequate training caused the deprivation of PLAINTIFF's rights by the OFFICER DEFENDANTS and DOES 1-8, inclusive; that is, Defendants' failure to train is so closely related to the deprivation of PLAINTIFF's rights as to be the moving force that caused the ultimate injury.

74.     As a direct and proximate result of the aforementioned conduct, PLAINTIFF endured severe pain and suffering.

75.     Accordingly, Defendants CITY and DOES 9-10, inclusive, are liable to PLAINTIFF for compensatory damages pursuant to 42 U.S.C. § 1983. PLAINTIFF also seeks reasonable attorneys' fees and costs under this claim.

**V.**

**FIFTH CAUSE OF ACTION**

***Monell* Liability – Ratification**

(By PLAINTIFF against Defendants CITY and DOES 9-10, inclusive)

76.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 74 of this complaint with the same force and effect as though fully set forth herein.

77.     At all relevant times, the OFFICER DEFENDANTS and DOES 1-8, inclusive, acted under color of law and within the course and scope of their employment with the CITY.

78.    The acts and omissions of the OFFICER DEFENDANTS and DOES 1-8, inclusive, as described above, deprived PLAINTIFF of his particular rights under the United States Constitution.

79.    Upon information and belief, a final policy maker for the CITY, acting under color of law, who had final policymaking authority concerning the acts of the OFFICER DEFENDANTS and DOES 1-8, inclusive, and the bases for them, ratified the acts and omissions of the OFFICER DEFENDANTS and DOES 1-8, inclusive, and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of the OFFICER DEFENDANTS' and DOES 1-8's acts, including, but not limited to, the excessive beating and tasering done against PLAINTIFF by the OFFICER DEFENDANTS and DOES 1-8, inclusive.

80.    On information and belief, the official policies with respect to the incident are that Fontana police officers are not to use excessive force against an individual. The actions of Defendants DOES 1 through 10, inclusive, deviated from these official policies.

81.    Upon information and belief, a final policymaker(s), including, but not limited to Defendants DOES 9-10, has determined (or will determine) that the acts of the OFFICER DEFENDANTS and DOES 1-8, inclusive, were "within policy."

82.    By reason of the aforementioned acts and omissions, Defendants CITY and DOES 9-10, inclusive, are liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983. Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff requests an entry of judgment in his favor and against Defendants CITY OF FONTANA, PIEHNIK, MULLINS, RUFF, and DOES 1-10, inclusive, as follows:

A. For Compensatory damages in the amount to be proven at trial;

B. For punitive damages against the individual defendants in an amount to be proven at trial;

C. For interest;

D. For reasonable costs of this suit and attorneys' fees; and

E. For such other further relief as the Court may deem just, proper, and appropriate.

SKAPIK LAW GROUP

Dated: September 20, 2023          By:     */s/ Matthew T. Falkenstein*
Mark J. Skapik
Geralyn L. Skapik
Blair J. Berkley
Matthew T. Falkenstein
Attorneys for Plaintiffs
CONSTANTINO JOSHUA
ACEVEDO III

COMPLAINT

1

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury.

SKAPIK LAW GROUP

Dated: September 20, 2023                    By:    */s/ Matthew T. Falkenstein*
Mark J. Skapik
Geralyn L. Skapik
Blair J. Berkley
Matthew T. Falkenstein
Attorneys for Plaintiffs
CONSTANTINO JOSHUA
ACEVEDO III